FILED

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

2013 AUG -9  P 1: 32

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

BRIGHTWURKS, INC.,

      Plaintiff,

v.

HELPSCOUT.COM *and*
HELP-SCOUT.COM, Internet Domain
Names.

      Defendants.

Civil Action No. *1:13cv975*
*CMH/TCB*

## COMPLAINT

COMES NOW Plaintiff Brightwurks, Inc. (the "Plaintiff"), and for its Complaint against the Defendant Internet Domain Names HELPSCOUT.COM and HELP-SCOUT.COM ("Defendants"), states and alleges as follows:

## NATURE OF THE ACTION

1.      This action arises under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.*, as amended (the "Lanham Act"), particularly, the Anti-cybersquatting Consumer Protection Act 15 U.S.C. § 1125(d) (the "ACPA"), infringement of a registered trademark 15 U.S.C. § 1114(1), and unfair competition 15 U.S.C. § 1125(a). To be in violation of the ACPA, one must establish that: (1) the Defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the Defendant acted "with bad faith intent to profit from that mark." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010).

2.      Plaintiff is the exclusive owner of the HELP SCOUT trademark (the "HELP SCOUT Mark") for use in connection with its software for email integration. The Registrant,

1

Andy Eder, is a cybersquatter because he registered, renewed, and he is using and trafficking in domain names, including the domain names <HELPSCOUT.COM> and <HELP-SCOUT.COM> (collectively, "the Infringing Domain Names"), which are identical or confusingly similar to the HELP SCOUT Mark, with a bad faith intent to profit therefrom.

## THE PARTIES

3.     Plaintiff Brightwurks, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a business address of 500 Harrison Avenue, Floor 3R, Boston, Massachusetts, 02118.

4.     Defendants <HELPSCOUT.COM> and <HELP-SCOUT.COM> are Internet domain names identified in the WHOIS database on domain name registrations as registered by Andy Eder, Alte Muensterstrasse 24, Ibbenbueren 49477, Germany (the "Registrant"). Non-party VeriSign, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a business address of 12061 Bluemont Way, Reston, VA 20190, and is the internet domain name Registry Administrator for the domain names at issue.

## JURISDICTION AND VENUE

5.     This action arises under the Lanham Trademark Act 15 U.S.C. §§ 1051 *et. seq.* (the "Lanham Act"). Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (trademark infringement).

6.     The Plaintiff is unable to establish personal jurisdiction over the Registrant because the Registrant resides in Germany.

7.     This Court has jurisdiction over the "rem" in this action, *i.e.*, the Infringing Domain Names, because the Registry Administrator is located in Virginia. As specifically provided by 15 U.S.C. § 1125(d)(2)(A): "The owner of a mark may file an *in rem* civil action

against a domain name in the judicial district in which the domain name register, registry, or other domain name authority that registered or assigned the name is located. . .."

8.      Venue is proper in this district under 28 U.S.C. § 1391(a) and 15 U.S.C. § 1125(d)(2)(C) because the *res*, *i.e.*, the Infringing Domain Names, are located within this judicial district.

## WRITTEN NOTIFICATION TO REGISTRY AND REGISTER

9.      Pursuant to 15 U.S.C. § 1125(d)(2)(D)(i) Plaintiff has or is in the process of notifying the Registry manager, VeriSign, Inc., by providing a written notice of a filed, stamped copy of this Complaint.  As a result thereof, pursuant to § 1125(d)(2)(D)(i)(II), the Registry is required to "not transfer, suspend or otherwise modify the domain name[s] during the pendency of the action."

## BACKGROUND

### Plaintiff's Trademark Rights

10.      Plaintiff is a provider of software for email integration.

11.      On or about March 28, 2010, Plaintiff registered the domain name <HELPSCOUT.NET>.   Plaintiff continues to own and operate the website in connection with the domain name.

12.      On or about May 1, 2011, Plaintiff began using the HELP SCOUT Mark (in standard characters) in commerce and since that time has engaged in continuous use of the HELP SCOUT Mark.

13.      On May 31, 2011, Plaintiff filed a U.S. trademark application for the HELP SCOUT Mark in standard characters, U.S. Ser. No. 76/707,799.

14.     On January 31, 2012, the U.S. Patent and Trademark Office registered the HELP SCOUT Mark (Reg. No. 4,092,655) for use in connection with "software as a service (SAAS) services featuring software which enables employees of a company to review and collaborate on e-mails sent to a single e-mail address, in order to provide customer service, technical support, and other e-mail based communication." A copy of the certificate of registration for the HELP SCOUT Mark is attached hereto as **Exhibit 1**.

15.     On January 28, 2013, Plaintiff filed a U.S. trademark application for the HELP SCOUT Mark (& Design), U.S. Ser. No. 76/713,309. A copy of the USPTO TESS printout for the HELP SCOUT Mark is attached hereto as **Exhibit 2**.

16.     The HELP SCOUT Mark is distinctive and serves to identify and indicate the source of Plaintiff's services to the consuming public in the United States and worldwide. As a result, Plaintiff has developed valuable goodwill in the HELP SCOUT Mark.

17.     Plaintiff has expended considerable time, money and effort in the development, preparation, promotion, and offering of services in connection with the HELP SCOUT Mark. As a result, the HELP SCOUT Mark has become a strong mark, has long been associated with Plaintiff, identifies Plaintiff's software for email integration and identifies Plaintiff as the source of these services.

### Respondent's Infringing Activities

18.     On or about August 19, 2009, the Registrant registered the Infringing Domain Names.

19.     Since the registration of the Infringing Domain Names, the only content displayed on the website for HELPSCOUT.com is:

> **helpscout.com wurde noch nicht weitergeleitet**
> Bitte setzen Sie sich ggfs. mit dem Support in Verbindung.

*www.helpscout.com*

The identical language appears on the <HELP-SCOUT.COM> website.   See **Exhibit 3.**
Translated, this means:

> **helpscout.com has not yet** passed
> Please contact if necessary with the support.

*www.helpscout.com*

The translation for <HELP-SCOUT.COM> is identical.  See **Exhibit 3a.**

20.     The Registrant has registered and currently owns approximately 422 domain names, most of which contain a similar message that appears on the Infringing Domain Names websites.  A representative sample is attached hereto as **Exhibit 4.**

21.     On or about April 11, 2011, Plaintiff, through its principal, John McIntosh, contacted the Registrant to inquire about purchasing the domain name <HELPSCOUT.COM> by emailing the Registrant at the email designated in the *WHOIS* record.  A copy of the email and *WHOIS* record are attached hereto as **Exhibit 5.**

22.     The Registrant did not respond.

23.     On or about August 20, 2011, Plaintiff again contacted the Registrant to inquire about purchasing the domain name <HELPSCOUT.COM>. See **Exhibit 6.**

24.     The Registrant did not respond.

25.     On or about August 19, 2012, the Registrant renewed the registration for the Infringing Domain Names.

26.     The Registrant renewed the registration of the Infringing Domain Names after he had actual knowledge of Plaintiff's valid HELP SCOUT Mark.

27.     On or about November 23, 2012, Plaintiff again contacted the Registrant and offered to purchase the <HELPSCOUT.COM> domain name for $5,000. See **Exhibit 7.**

5

28.     On or about November 25, 2012, the Registrant responded and told the Plaintiff in an email that the "highest offer is lying at" £245,000 (roughly $330,000 at today's exchange rate) and that the Registrant "must get better offer." See **Exhibit 8**.

29.     On information and belief, the Infringing Domain Names have prevented consumers from accessing Plaintiff's website and services.

30.     On or about February 27, 2013, Plaintiff filed a Uniform Dispute Resolution Act ("UDRP") Complaint against the Registrant.  A copy of the UDRP Complaint is attached hereto as **Exhibit 9.**

31.     On or about May 1, 2013, the UDRP Panel issued its decision, agreeing with Plaintiff that the Registrant has never used the <helpscout.com> and <help-scout.com> domain names in connection with any *bona fide* offering of goods or services, or legitimate noncommercial or fair use, finding:  "[Registrant's] failure to use or make any demonstrable plan to use the disputed domain names shows that Respondent has neither a . . . *bona fide* offering of goods or services, nor a . . . legitimate noncommercial or fair use planned for the domain names." A copy of the UDRP Panel decision is attached hereto as **Exhibit 10.**

32.     Although the UDRP Panel found that the Registrant did not register the Infringing Domain Names in bad faith at the original time of registration, the UDRP Panel did not address the issue of whether the Registrant renewed the Infringing Domain Names in bad faith.

33.     On or about July 30, 2013, Plaintiff sent the Registrant a cease and desist letter attached hereto as **Exhibit 11.**

34.     The Registrant did not respond.

35.     The Registrant has not sold or otherwise transferred the Infringing Domain Names to a third party.

## COUNT I
## Cybersquatting – 15 U.S.C. § 1125(d)

36.     Plaintiff restates and re-alleges each and every preceding paragraph of this Complaint as though fully set forth herein.

37.     The Registrant has acted with bad faith intent to profit by purchasing hundreds of domain names, including the Infringing Domain Names.

38.     The Registrant has registered and renewed, trafficked in, and/or used the Infringing Domain Names that are identical or confusingly similar to the HELP SCOUT Mark.

39.     The Registrant's renewals of the Infringing Domain Names are effectively new registrations because the Registrant never made a legitimate use of the Infringing Domain Names since the renewals and was aware of the Plaintiff's distinctive mark at the time of the renewals.

40.     The Registrant owns no trademark or other intellectual property rights in, and no trademark registrations for, the HELP SCOUT Mark, or any mark similar thereto.

41.     The Infringing Domain Names do not consist of the Registrant's legal name or any name commonly used to identify the Registrant.

42.     The Registrant has never made any *bona fide* noncommercial or fair use of the HELP SCOUT Mark on sites accessible via the Infringing Domain Names or otherwise.

43.     The Registrant indicated to the Plaintiff that there was a current offer for the domain name in the amount of approximately $330,000 in an attempt to sell one or more of the Infringing Domain Names to Plaintiff for over $330,000, a price far in excess of the cost of registering and maintaining the domain names.

44.     The Registrant is holding the Infringing Domain Names for ransom because he does not have nor ever had an intention to use the Infringing Domain Names in connection with any *bona fide* offering of goods or services, or legitimate non-commercial or fair use; and, after

7

being contacted by the Plaintiff, who has legitimate rights in the HELP SCOUT Mark, the Registrant attempted to leverage the Infringing Domain Names for an excessive amount.

45.     The Registrant's ownership of hundreds of registrations and its attempt to sell to Plaintiff the domain name www.helpscout.com for roughly $330,000 is, upon information and belief, an intentional and willful attempt to profit, in bad faith, from the HELP SCOUT Mark.

46.     Plaintiff has been damaged by the Registrant's improper activities.  Further, the Registrant's unlawful acts have caused, and will continue to cause, irreparable harm to Plaintiff unless the Registrant is enjoined by the Court.

## COUNT II
### Infringement of Registered Trademarks – 15 U.S.C. § 1114(1)

47.     Plaintiff restates and re-alleges each and every preceding paragraph of this Complaint as though fully set forth herein.

48.     Plaintiff owns the HELP SCOUT Mark.

49.     The Registrant's use of the HELP SCOUT Mark in the Infringing Domain Names constitutes infringement of Plaintiff's registered trademark.  The Registrant has engaged in the unauthorized use in commerce of the HELP SCOUT Mark, which is identical to Plaintiff's registered mark.  At no time did Plaintiff grant the Registrant the right to use, much less sell, its mark.

50.     The Registrant is attempting to sell the Infringing Domain Names which contain Plaintiff's registered trademark to the highest bidder.

51.     Because the Infringing Domain Names contain the entirety of the HELP SCOUT Mark, but display only a cryptic message in German, the use of the Infringing Domain Names is likely to cause confusion, mistake, and deception among consumers as to whether the website reached through the Infringing Domain Names is Plaintiff's, whether the HELP SCOUT Mark is

Plaintiff's, whether Plaintiff's website and its business are operational, and as to whether Plaintiff offers services to non-German speakers. As a result, the Infringing Domain Names have prevented consumers from accessing Plaintiff's website and services. Thus, the Registrant is in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

52.     The conduct of the Registrant alleged herein was and is intentional and willful. The Registrant knew of Plaintiff's prior use and registration of the HELP SCOUT Mark. At a minimum, the Registrant knew of Plaintiff's prior use and registration of the mark by virtue of Plaintiff's communications offering to purchase the domain name.

53.     Plaintiff has been damaged by the Registrant's improper activities. The Registrant's unlawful acts have caused, and will continue to cause, irreparable harm to Plaintiff unless the Registrant is enjoined by the Court.

## COUNT III
### Unfair Competition – 15 U.S.C. § 1125(a)

54.     Plaintiff restates and re-alleges each and every preceding paragraph of this Complaint as though fully set forth herein.

55.     The Registrant's unauthorized use of Plaintiff's HELP SCOUT Mark in interstate commerce is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

56.     The Registrant's improper use of Plaintiff's HELP SCOUT Mark constitutes unfair competition, false advertising, false designation of origin, and/or false description under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

57.     Plaintiff has been damaged by the Registrant's improper activities. Further, the Registrant's unlawful acts have caused, and will continue to cause, irreparable harm to Plaintiff unless Registrant is enjoined by the Court.

### DEMAND FOR JURY TRIAL

Demand for jury trial is hereby made.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

1.      Judgment in favor of Plaintiff and against Defendants on all claims;

2.      An order preliminarily and permanently enjoining Defendants from trademark infringement, and directing the Registrar to transfer the Infringing Domain Names to Plaintiff;

3.      An order compelling VeriSign to change the registrar of the Infringing Domain Names to a registrar of Plaintiff's choosing and thereafter be registered in Plaintiff's name;

4.      Recovery of Plaintiff's attorney fees and costs incurred in this action; and

5.      Such other relief as the Court may deem just and proper.

Respectfully submitted,

BRIGHTWURKS, INC.
By Counsel

Dated: August 9, 2013

Shauna M. Wertheim, VSB #33690
*Counsel for Plaintiff Brightwurks, Inc.*
THE MARBURY LAW GROUP, PLLC
11800 Sunrise Valley Drive
15th Floor
Reston, VA 20191
Tel: (703) 391-2900
Fax: (703) 391-2901
swertheim@marburylaw.com

and

10

Thomas F. Dunn, *pro hac vice* pending
BBO # 641252
MORSE, BARNES-BROWN &
PENDLETON, P.C.
CityPoint
230 Third Avenue, 4th Floor
Waltham, Massachusetts  02451
Tel:  (781) 622-5930
Fax: (781) 622-5933
tdunn@mbbp.com